UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITY OF DULUTH,

      Plaintiff,

  v.

SALLY JEWELL,
SECRETARY OF THE INTERIOR,
in her official capacity,

      Defendant.

Civil Action No. 12-1116 (CKK)

# MEMORANDUM OPINION
(September 29, 2013)

Plaintiff, the City of Duluth, has brought suit against Defendant Sally Jewell, in her official capacity as Secretary of the Interior, challenging the Department of the Interior's May 10, 2012 decision to cancel the business lease between the Fond du lac Band of Lake Superior Chippewa and the Duluth-Fond du Lac Economic Development Commission.[1] Presently before the Court is Plaintiff's [14] Motion to Supplement the Administrative Record. Upon a searching review of the parties' submissions,[2] the applicable authorities, and the record as a whole, the Court shall DENY Plaintiff's [14] Motion to Supplement the Administrative Record.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Sally Jewell has been automatically substituted for Kenneth L. Salazar, whom the parties' pleadings name as Defendant.

[2] While the Court renders its consideration on the record as a whole, its consideration has focused on the following documents: Pl.'s Compl. ("Compl."), ECF No. [1]; Pl. City of Duluth's Mot. to Supp. the Admin. Record ("Pl.'s Mot."), ECF No. [14]; Pl. City of Duluth's Stmt. of P&A Supp. its Mot. for Supp. of the Admin. Record ("Pl.'s Mem."), ECF No. [14-1]; United States' Opp'n to Pl.'s Mot. to Supp. the Admin. Record and for Oral Arg. ("Def.'s Opp'n"), ECF No. [15]; City of Duluth's Reply Mem. Supp. its Mot. to Supp. the Record ("Pl.'s Reply"), ECF No. [16]; Joint Appendix of the Parties Regarding Plaintiff's Motion to Supplement the Administrative Record, ECF No. [17]. In an exercise of its discretion, the Court finds that holding oral argument on the instant motion would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

Although the merits of Plaintiff's challenge to the Department's actions are not currently before the Court, a discussion of the relevant background underlying Plaintiff's claims in this case will help to place the parties' arguments with respect to the pending motion to supplement the administrative record in the proper context.

## A. Factual Background

In 1984, the Fond du Lac Band of Lake Superior Chippewa Indians ("Band") began negotiations with Plaintiff the City of Duluth ("City" or "Plaintiff") for the creation of a casino in Duluth, Minnesota. Pl.'s Mem. at 4. In May 1985, as part of these negotiations, the Band petitioned the Secretary of the Interior ("Secretary" or "Defendant") to approve a set of agreements between the City and the Band and to accept the land proposed for the Casino's location into trust for the Band in accordance with 25 U.S.C. §§ 465, 467. AR1066-67. The following month, the Deputy Assistant Secretary for Indian Affairs approved the agreements and notified the Bureau of Indian Affairs that the Casino Property could be accepted into trust on behalf of the Band. AR57. The negotiations between the City and the Band also resulted in a lease agreement, which was approved by the Department of Interior ("Department" or "DOI") on April 10, 1986. AR41. Since 1986, the Band has operated the Fond du Luth Casino ("Casino") in downtown Duluth. Pl.'s Mem. at 4.

In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA"), codified as amended at 25 U.S.C. §§2701-2721, which brought into question the legality of the 1986 agreements between the Band and the City. Pl.'s Mem. at 5. In September 1993, the National Indian Gaming Commission ("NIGC") – an independent regulatory agency within DOI established pursuant to IGRA – advised the Band and the City that the operation of the Casino

under the 1986 agreements violated IGRA. AR1204-05. Accordingly, on June 20, 1994, the Band and the City executed new agreements which were approved by the Secretary and the NIGC. AR1038-63; AR1177-1203. This 1994 agreements provided for a sublease, under which the Duluth-Fond du Lac Economic Development Commission ("Commission"), which held a lease from the Band for the casino property pursuant to the 1986 agreements, agreed to sublease this leasehold interest in the casino property back to the Band. AR1038-63. The Commission also assigned its rights to the rent from the lease to the City. *Id.* Under the 1994 agreements, the parties agreed to meet by January 1, 2010, to negotiate regarding the percentage of revenue owed to the City for the 25-year term beginning on April 1, 2011. *Id.*

On August 6, 2009, the Band announced that it was ceasing all payments to the City under the 1994 agreements, pursuant to its belief that it was overpaying rent under the terms of the sublease. *See City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 708 F.Supp.2d 890, 895 (D. Minn. 2010). In response, the City commenced litigation against the Band in the United States District Court for the District of Minnesota. *See generally id.* After that court ruled on April 21, 2010 that the 1994 agreements were valid and enforceable, *see id.*, the Band requested formal review of the agreement from the NIGC. Pl.'s Mem. at 6-7. On October 20, 2010, the chair of the NIGC advised the City and the Band that it would review the agreements. AR698. On July 12, 2011, the NIGC issued a Notice of Violation ("NOV") concluding that the agreements "grant the City of Duluth, Minnesota . . . an unlawful proprietary interest in the Band's gaming activity and prevent the Band from possessing the sole responsibility for the gaming activity." AR000061. Accordingly, NIGC determined that "the agreements as written, and as the parties operated under them, violate the Indian Gaming

3

Regulatory Act ("IGRA"), 25 U.S.C. § 2710(b)(2)(A); NIGC regulations, 25 C.F.R. §§ 522.4(b)(1) and 522.6(c); and the Band's gaming ordinance . . . ." *Id.*

On January 19, 2012, DOI officials met with the Band's legal representatives, AR 264-265, and on February 17, 2012, the Band made a formal request to DOI to cancel the lease agreement contained in the 1986 agreement, as modified by the 1994 agreement. AR410-431. On March 26, 2012, the Assistant Secretary for Indian Affairs ("ASIA") advised the City via letter that the Commission was in violation of the lease between the Commission and the Band. AR917-18. The City responded to the DOI's notice on April 11, 2012, noting that the lease had previously been approved by both DOI and NIGC. AR1404-17. The City also argued that ongoing litigation between the City and the Band on the validity of the 1994 agreements compelled DOI to take no action. *Id.* However, on May 10, 2012, the DOI issued a final determination cancelling the business lease dated April 1, 1986, between the Band and the Commission. AR1451-53. In this final determination, the DOI cited to the NIGC's NOV as its primary reason for cancelling the lease. *Id.*

## B. Procedural Background

On July 6, 2012, the City filed suit in this Court, alleging that the Department's May 10, 2012 final determination to cancel the lease was arbitrary, capricious, or otherwise not in accordance with law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See* Compl., ECF No. [1]. On November 1, 2012, Defendant filed the administrative record concerning the May 10, 2012 final determination decision. *See* Notice of Filing of Admin. Record, ECF No. [7]. On December 6, 2012, Defendant filed the Certification of Administrative Record ("Certification"), ECF No. [12-1]. This Certification includes a declaration by Solicitor's Office attorney Jennifer Turner that "to the best of [her] knowledge, the documents

4

filed with the Court and served on counsel of record constitute a true, correct, and complete copy of the administrative record of the decision to cancel the Business Lease. The administrative record does not contain documents protected in their entirety by privileges, such as attorney-client, attorney work product, and deliberative process." *Id.*

In December 2012, the City sent an informal request to the Secretary for supplementation of the administrative record. Def.'s Opp'n at 2. The Secretary did not agree to supplement the record with any specific documents. *Id.* Subsequently, the City filed its instant [14] Motion to Supplement the Administrative Record. In this motion, Plaintiff requests that the Court order Defendant to supplement the administrative record by providing the following information:

a. The entire administrative record of the National Indian Gaming Commission ("NIGC") for its Notice of Violation 11-02 ("NOV'). *See, Docket Entry No. 7* (AR919-937). This includes all documents and information communicated by the Fond du Lac Band of Lake Superior Chippewa ("Band") and/or its legal counsel to the NIGC, and all notes, e-mails or documents summarizing or describing such information.

b. All documents and records of communications between the DOI, BIA or the NIGC related to the NOV whether created before or after the NOV was issued. This includes all notes, e-mails or documents summarizing or describing conversations occurring between these entities.

c. With reference to the Administrative Record ("AR") filed as Docket Entry No. 7 the following:

   i. AR 262: all information exchanged and notes taken or documents exchanged before, during, or after the meeting between federal employees and the attorneys for the Band referenced.

   ii. AR 849: all briefing materials provided in response to Newland's e-mail to Roberts and Stevens, and all notes made during the briefing meeting that occurred.

   iii. AR 993: produce all information, documents or notes describing or summarizing the information exchanged with Patty Olby or Diane Rosen during the referenced April 13th conference call.

iv. AR 1428: produce all information, documents or notes describing or summarizing the information exchanged with John Hay during the referenced April 13th conference call.

v. AR 1447: the "latest information" referenced in the May 2, 2012 e-mail.

d. All documents or other information provided by the Fond du lac Band and/or its legal representatives to the DOI, BIA or NIGC related to the relationship between the City and the Band. This includes any notes documenting or summarizing the information provided during conversations.

e. All documents or other information contained in the administrative record of the DOI or BIA related to the Business Lease dated April 1, 1986.

f. All documents or other information contained in the administrative record of the DOI or NIGC related to the 1994 agreements between the Band, the Commission and the City.

g. All internal memoranda providing direction or standards related to lease termination decisions.

h. All internal memoranda providing direction or standards utilized by the NIGC in making determinations related to the proprietary interest standard.

Pl.'s Mot. ¶ 1.

## II. LEGAL STANDARD

The Administrative Procedure Act directs the Court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. This requires the Court to review "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). *See also Natural Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975) (holding that the district court's review of a "partial and truncated record" was error and remanding the case for review on the "entire administrative record"). Courts in this Circuit have "interpreted the 'whole record' to include 'all documents and materials that the agency 'directly or indirectly considered' . . . [and nothing] more nor less.'"

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (quoting *Maritel, Inc. v. Collins*, 422 *F. Supp. 2d* 188, 196 (D.D.C. 2006)). *See also Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

"Supplementation of the administrative record is the exception, not the rule." *Id.* at 5 (quoting *Motor & Equip. Mfrs. Assn. Inc. v. EPA*, 627 F.2d 1095, 1105 (D.C.Cir.1979)). *See also Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) ("A court that orders an administrative agency to supplement the record of its decision is a rare bird."). This is because "an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Pac. Shores*, 448 F. Supp. 2d at 5. "The rationale for this rule derives from a commonsense understanding of the court's functional role in the administrative state [:] 'Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President.'" *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 11 (D.D.C. 2001) (quoting *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1325-26 (D.C. Cir. 1984)). Indeed, "[c]ommon sense dictates that the agency determines what constitutes the whole administrative record, because it is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it – namely, were directly or indirectly considered." *Pac. Shores*, 448 F. Supp. 2d at 6 (citation and quotation marks omitted).

With that said, an agency "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision

was made." *Blue Ocean Institute v. Guttierez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007). Further, the agency may not exclude information from the record simply because it did not "rely" on the excluded information in its final decision. *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006). Rather, "a complete administrative record should include all materials that might have influenced the agency's decision[.]" *Amfac Resorts*, 143 F. Supp. 2d at 12 (citations and internal quotes omitted). "[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *Id.*

"[A]n administrative record may be 'supplemented' in one of two ways—either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extra-judicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." *Wildearth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009); *accord Styrene Info. and Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 63-64. Here, Plaintiff moves for supplementation only under the first approach. That is, Plaintiff argues that the myriad of documents and data it alleges are missing from the administrative record should be included therein because they were considered, either directly or indirectly, by the Secretary in connection with the challenged decision.

Supplementation of the record is appropriate only under three "unusual circumstances": "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (internal quotes and citation omitted). Further, to rebut the presumption of regularity, the

party seeking supplementation must introduce "concrete evidence" to "prove" that the specific documents allegedly missing from the record were "before the actual decisionmakers" involved in the challenged agency action. *Pac. Shores*, 448 F. Supp. 2d at 6 (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)). *Cf. County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 72 (D.D.C. 2008) (explaining that "a party seeking to supplement the record must establish that the additional information was known to the agency when it made its decision, the information directly relates to the decision, and it contains information adverse to the agency's decision.").

In this regard, Plaintiff must identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are "likely" to exist as a result of other documents that are included in the administrative record. *See Blue Ocean*, 503 F. Supp. 2d at 369 (finding that the plaintiff failed to overcome the presumption that the administrative record was complete where the plaintiff offered no more than conclusory allegations that the administrative record lacked unspecified reports, notes of discussions, and other documents that "must have" existed in connection with the robust debate concerning the assumptions and analyses underlying the agency action); *see also Franks*, 751 F. Supp. 2d at 73-74 (finding that the plaintiffs failed to overcome the strong presumption of regularity to which the agency was entitled in compiling its record where the plaintiffs had "not offered nonspeculative grounds for their belief that the requested documents exist, much less that the [agency] considered them").

Further, Plaintiff cannot meet its burden by merely asserting that such documents and data are relevant, were possessed by the entire agency at or before the time the agency action was taken, and were inadequately considered. *See Pac. Shores*, 448 F. Supp. 2d at 7; *accord Franks*,

9

751 F. Supp. 2d at 67. Rather, for the Court to entertain a request for supplementation, "beyond [a] description and the date of the proffered exhibits," Plaintiff must describe "when the documents were presented to the agency, to whom, and under what context." *Pac Shores*, 448 F. Supp. 2d at 7 ("Although Plaintiffs imply that the Corps possessed some of the documents because Plaintiffs obtained them through a Freedom of Information Act request, there is no evidence that the Corps' decisionmaker(s) were actually aware of the fourteen documents Plaintiffs seek to include."). Further, Plaintiff must offer "reasonable, non-speculative" grounds for its belief that the documents were directly or indirectly *considered* by the Secretary. *See id.* If Plaintiff "can present such proof showing that [the Secretary] 'did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate.'" *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (citing *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)).

### III. DISCUSSION

**A. The NIGC's Administrative Record for its Notice of Violation**

Plaintiff first (and most strenuously) argues that the administrative record should be supplemented to include "[t]he entire administrative record of the National Indian Gaming Commission ("NIGC") for its Notice of Violation 11-02 ("NOV'). *See, Docket Entry No. 7* (AR919-937). This includes all documents and information communicated by the Fond du Lac Band of Lake Superior Chippewa ("Band") and/or its legal counsel to the NIGC, and all notes, e-mails or documents summarizing or describing such information." Pl.'s Mot. ¶ 1(a). Plaintiff contends that the NIGC's July 12, 2011 NOV was the only basis for the DOI's action terminating the lease on May 10, 2012, as the Department's letter of this date states that "[i]n determining that [Section 19(c)(7)(iii) of the Lease] had been violated [in its March 26, 2012

letter to the Commission], the Department relied on a July 12, 2011 NIGC Notice of Violation ("NOV")." Pl.'s Mem. at 11-13. Given this language, Plaintiff contends that the Department "clearly indirectly relied upon the record of decision before the NIGC in making its decision" and that "[w]ithout the NIGC's full record, the court cannot conduct a proper review of the DOI's action." *Id.* at 12.

The Court finds Plaintiff's argument unavailing. As Defendant notes, "[a]ny document that originated at NIGC, made its way to the Department of Interior, and was considered by the Secretary in his determination to cancel the 1986 Business Lease has already been included in the Lease Cancellation Record." Def.'s Opp'n at 5. Here, the Department issued its May 10, 2012 decision as to the cancellation of the Lease at least in part on the basis of the NOV. Accordingly, the nineteen-page NOV, explaining in detail the NIGC's decision, has properly been included as part of the administrative record that the Defendant has provided to the Court. AR000061-79. Yet, although DOI relied on the NIGC NOV in making its decision, there is no evidence that the Department considered the record of material underlying the NOV. Having not been considered by the agency in the decision at issue, such materials are not properly part of the administrative record. As this Court has noted, "[t]he Administrative Record is not 'insufficient' merely because it omits documents that were considered by a *different* agency that provided advice to the agency responsible for making the ultimate decision." *American Petroleum Tankers Parent, LLC v. United States*, No. 12-cv-1165, 2013 WL 3462575 (D.D.C. July 13, 2013) (emphasis in original).

In *Saratoga Development Corp. v. United States*, 21 F.3d 445 (D.C.Cir.1994), the plaintiff made the same argument Plaintiff makes here. The decisionmaker in *Saratoga*, the Pennsylvania Avenue Development Corporation ("PADC"), was required by statute to consult

11

with the General Services Administration ("GSA") and the International Cultural and Trade Center Commission before selecting a developer for a particular project. 21 F.3d at 457. The plaintiff argued that the PADC submitted an "incomplete" administrative record to the District Court because the record did not include technical reports prepared by the GSA and the Commission regarding the proposals from various developers. *Id.* The D.C. Circuit rejected plaintiff's contention that the exclusion of these reports from the record was in error "for the simple reason that they were never part of the record in the first place; they were neither prepared for nor provided to the PADC or its staff." *Id.* Here, the administrative record underlying the NIGC's decision to issue an NOV was never placed before the Department, and accordingly these materials need not be added to the administrative record in this matter. Despite Plaintiff's contentions, reliance on the decision of a sister agency does not automatically require supplementation of the administrative record with the internal documents underlying the sister agency's decision. *See also TOMAC v. Norton*, 193 F.Supp.2d 182, 195 (D.D.C. 2002) (rejecting plaintiff's "erroneous[] assert[ion] that all other federal agencies involved in the decisionmaking process are required to turn over all relevant information in their own files.")

The Court is unpersuaded by Plaintiff's attempts to distinguish *Saratoga Development* and other cases of this court refusing to supplement the administrative record with materials from sister agencies that were never placed before the agency at issue. Plaintiff argues that the cases cited were different because they did not involve wholesale adoption of another agency's conclusions. Pl.'s Reply at 2-3. But that is not the case here either. Although DOI gave substantial weight to the NIGC's decision to issue an NOV in making its decision, the agency's May 10, 2012 letter indicates that this decision was not simply a rubber stamp. AR1451-53. The final determination letter stated that it had considered and rejected the City's arguments against

cancelling the lease. *See* AR1451 ("nothing in your letter of April 11, 2012 persuades us that our lease violation determination was in error"). Indeed, Plaintiff's argument proves too much. If the NOV were the sole basis for the Department's decision – as Plaintiff contends – then the nineteen pages of the NOV should be the *only* material in the administrative record. Yet, the many hundreds of pages of the record outside the NOV belie this conclusion.

Moreover, the cases cited by Plaintiff in support of its claim for supplementation are inapposite. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735 (10th Cir. 1993); *Novartis Pharmaceuticals v. Shalala*, No. 99-cv-323, 2000 WL 1769589 (D.D.C. Nov. 27, 2000). Both of these cases involve decision-making *within* the same agency regarding the same decision, rather than reliance on decisions from other agencies. Accordingly, these cases are consistent with the principle that "if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *Amfac Resorts*, 143 F. Supp. 2d at 12. *Saratoga Development* deals with the separate question of reliance on the decisions of another agency. Pursuant to this binding D.C. Circuit precedent, the Court rejects Plaintiff's request to supplement the administrative record with the materials before the NIGC in issuing the NOV.

**B. Documents and Records of Communications**

Plaintiff next requests a variety of unspecified documents and records of communications that may or may not exist. Pl.'s Mot. ¶ 1(b), (c), (d).[3] Defendant has already included many

---

[3] To the extent Request ¶ 1(d) seeks to add communications between the Band and the NIGC to the administrative record, Plaintiff *has* produced specific documents obtained through the Freedom of Information Act fitting into this category that are not part of the administrative record. Pl.'s Mot, Affid. of M. Allison Lutterman Attaching Exhibits Supp. Pl.'s Mot. to Supp. Admin. Record. Yet, as discussed, *supra*, these documents will not be added to the administrative record because Plaintiff offers no evidence that they were ever considered, or even placed, before the relevant decisionmaker here, the Department. *See Pac. Shores*, 448

documents in the record that fall under the City's broad requests. To the extent the City seeks additional unspecified documents, the Court finds these requests strikingly similar to the requests rejected by the court in *Blue Ocean*, 503 F.Supp.2d at 369, where the plaintiff sought "unspecified documents that are likely to exist, it argues, as a result of other documents that are included in the administrative record." Here, as there, Plaintiff is "not indicating specific, known additional documents that it insists should be included in the administrative record. Instead, it reasons that because there are certain documents in the administrative record, it follows that there must have been discussions and analyses of the issues raised by those documents." *Id.* at 369-370. To wit, Plaintiff requests all information exchanged between agencies regarding a broad issue, or all information exchanged in preparation for or in response to specific meetings and telephone calls. Plaintiff's request 1(c)(i) is a representative example. This request points the Court to a January 17, 2012 e-mail exchange contained in the administrative record that schedules a meeting between the Band's legal representatives and DOI. Pl.'s Mot. ¶ 1(c)(i); AR262. Based on these e-mails, Plaintiff requests "all information exchanged and notes taken or documents exchanged before, during, or after the meeting between federal employees and the attorneys for the Band referenced." Pl.'s Mot. ¶ 1(c)(i). Such a request assumes that this information exists in written form, or even exists at all – a fact for which the text of the e-mails provides no support. AR262. Plaintiff offers no additional evidence to support these assumptions. Furthermore, Plaintiff provides no evidence that these documents, if they exist, came before the relevant agency decisionmaker. *See Pac. Shores*, 448 F.Supp.2d at 7 ("It is not enough for [plaintiff] to state that the documents were before the entire [agency], but rather it

---

F.Supp.2d at 6 (noting that plaintiff "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.") (internal citation omitted). While these documents may properly be part of the NIGC record, they are not properly part of the Department's Lease Cancellation Record.

must instead prove that the documents were before the [agency] decisionmaker(s).""). In *Blue Ocean*, the court rejected the exact same sorts of contentions Plaintiff makes here, concluding that the plaintiff was "reduced to theorizing that the documents *may* exist, which fails to overcome the presumption that the record is complete." *Id.* at 371 (emphasis in original). *See also Franks*, 751 F.Supp.2d at 73-74 ("Plaintiffs have not offered nonspeculative grounds for their belief that the requested documents exist, much less that the Service considered them. They therefore have not overcome the strong presumption of regularity to which the Service is entitled in compiling its record.") (internal citation omitted). Accordingly, the Court will not order Defendant to supplement the administrative record to include these unspecified, potentially non-existent documents in Plaintiff's requests.

**C. Documents or Information in Previous Administrative Records**

Plaintiff also requests that the administrative record be supplemented with "[a]ll documents or other information contained in the administrative record of the DOI or BIA related to the Business Lease dated April 1, 1986" as well as "[a]ll documents or other information contained in the administrative record of the DOI or NIGC related to the 1994 agreements between the Band, the Commission, and the City." Pl.'s Mot. ¶ 1(e), (f). The City argues that this supplementation is necessary because "[t]he reasons for the initial approvals are necessary to understand why the agencies changed their mind." Pl.'s Mem. at 13. Presumably, Plaintiff views these previous administrative records are necessary to enable judicial review of whether the current challenged action is arbitrary and capricious. *See City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (noting that supplementation of the record is appropriate "if the agency failed to explain administrative action so as to frustrate judicial review.") (internal quotation marks omitted).

Yet, in fact, such previous administrative records are *not* necessary to enable judicial review here. As the Supreme Court has made clear, there is "no basis in the Administrative Procedure Act or in our opinions for a requirement that all agency change be subjected to more searching review." *FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 514 (2009). "The statute makes no distinction . . . between initial agency action and subsequent agency action undoing or revising that action." *Id.* at 515. Rather, "an agency's explanation must minimally contain 'a rational connection between the facts found and the choice made.'" *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). When an agency changes course, it "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Fox*, 556 U.S. at 515 (emphasis in original). The administrative record surrounding the May 12, 2012 decision, to the extent it contains this information, is sufficient to enable judicial review. Hence, supplementation of the record with the administrative records for prior NIGC, DOI, and BIA decisions is unnecessary. Moreover, as Defendant notes, the Lease Cancellation Letter and other documents in the record (including the NIGC's Notice of Violation) do describe the basis for the Secretary's decision to cancel the previously approved agreement, and "to the extent that documents from those prior decisions were relied upon in the decision to cancel the Lease, those documents have been included in the record." Def.'s Opp'n at 8. Therefore, the Court will not grant Plaintiff's request to supplement the administrative record with the full administrative record for these prior decisions.

**D. Internal Memoranda**

In addition, Plaintiff requests that the administrative record be supplemented with "[a]ll internal memoranda providing direction or standards related to lease termination decisions." Pl.'s Mot. ¶ 1(g), as well as "[a]ll internal memoranda providing direction or standards utilized by the NIGC in making determinations related to the proprietary interest standard," Pl.'s Mot. ¶ 1(h). As discussed, *supra*, the internal decision-making processes of the NIGC in issuing the NOV, to the extent not presented to the DOI, are not properly part of the administrative record here. The Court is similarly unpersuaded to supplement the administrative record to include any DOI internal memoranda relating to lease termination decisions, primarily because Plaintiff has not put forth any evidence that such memoranda exist or were even considered by the agency here. The decision at issue – the cancellation of the 1986 lease – was made by the Acting Assistant Secretary for Indian Affairs, who holds the Secretary's authority over Indian Affairs. U.S. Dep't of Interior, Departmental Manual §§ 109, 209.8.1. Plaintiff does not point to anything in the existing Administrative Record to suggest that such internal memoranda exist or that they guided the lease cancellation decision here. Indeed, Defendant claims, and the May 10, 2012 letter supports the conclusion that, the ASIA followed the Indian Long-Term Leasing Act regulations for non-agricultural leases, 25 C.F.R. § 162.600 et seq., rather than any formal guidelines, in making the decision regarding the lease cancellation. Def.'s Opp'n. at 11; AR1451-53, Such a statement is entitled to deference under the "strong presumption of regularity" accorded to an agency in designating an administrative record. *Pac. Shores*, 448 F.Supp.2d at 5. Here, Plaintiff has offered no grounds to support the notion that these documents even exist, much less "reasonable, non-speculative grounds for their belief that the documents were directly or indirectly considered by the [decisionmaker]." *American Petroleum*,

2013 WL 3462575, at *5 (internal quotation marks omitted). Accordingly, the Court will not order supplementation of the record on these grounds.

**E. Broken E-mail Link**

Finally, Plaintiff requests information previously associated with the expired link at AR 946. Although Plaintiff did not list this as one of its requests in its Motion to Supplement, it does reference this request in its accompanying Statement of Points and Authorities. Pl.'s Mem. at 3. AR 946 is an e-mail whose body consists of a link to an MSNBC.com article. Neither party disputes that the MSNBC.com article in the link is properly part of the administrative record. Def.'s Opp'n at 12. However, at this point, as both parties concede, the link is no longer active and the article can no longer be accessed. *Id.* Further, there is no evidence that the article was ever printed and added to the administrative record. *Id.* Counsel for the Secretary contacted MSNBC.com in the hopes of obtaining a hard copy of the article, but, as of the date of her opposition, Defendant had received no response.[4] *Id.* Recognizing that this article is properly part of the administrative record, the Court strongly suggests that both parties, and particularly Defendant, continue and accelerate their efforts to obtain a hard copy of the article.

## IV. CONCLUSION

For all of the reasons stated herein, the Court **DENIES** Plaintiff's [14] Motion to Supplement the Administrative Record. An appropriate Order accompanies this Memorandum Opinion.

Date: September 29, 2013

                                                                                                 /s/

---

[4] In her opposition, Defendant cites to other articles published in the same timeframe as the MSNBC.com article, which provide context as to the content of the missing article. *Id.* However, because these articles were not before the Secretary at the time of the decision at issue, they are not properly part of the administrative record.

**COLLEEN KOLLAR-KOTELLY**
United States District Judge